UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JEREMY GLEICH, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| v. ) | Case No. 4:22-cv-00619-SRC |
| ) | |
| BI-STATE DEVELOPMENT ) | |
| AGENCY, ) | |
| ) | |
| Defendant(s). | |

**Memorandum and Order**

Facing allegations that it discriminated against Jeremy Gleich in violation of Title VII of the Civil Rights Act of 1964, Bi-State Development Agency moves to dismiss this case, arguing that Gleich fails to state a claim for retaliation, sex discrimination, and race discrimination. Gleich opposes the motion, but has also filed a motion for leave to amend his complaint to add three new factual allegations. Bi-State, in turn, argues that Gleich's proposed Amended Complaint comes after undue delay and that his amendment attempt is futile because the three additional allegations fail to render his claims any more plausible. Because the Court rejects Bi-State's undue-delay argument, the Court resolves the pending motions by determining whether Gleich's proposed amended complaint is futile. The Court concludes that it is not, and grants Gleich's motion for leave to amend.

**I.      Background**

For purposes of deciding the motion to dismiss and motion for leave to amend, the Court accepts as true the following facts that Gleich alleges in his proposed amended complaint. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Zutz v. Nelson*, 601 F.3d 842, 850–51 (8th

Cir. 2010) (applying *Twombly* pleading standard to determine whether proposed amended complaint stated a claim).

Bi-State employed Gleich as a Transit Security Specialist ("TSS") from 2017 to 2021. Doc. 14-1 at ¶¶ 10, 21. After episodes of tardiness, the General Manager of Field Security—Kevin Scott—placed Gleich on a 30-day Performance Improvement Plan to encourage punctuality. *Id.* at ¶ 13. Gleich, a Caucasian male, alleges that Scott did not place female and non-Caucasian Transit Security Specialists on PIPs for similar conduct, leading Gleich to file a complaint with Bi-State's EEO/Workforce Diversity Department. *Id.* at ¶ 14. After taking a few months of medical leave, Gleich alleges that he "successfully" completed the PIP, *id.* at ¶ 17, and that over the course of the following months he filed "several additional/continuing complaints regarding [Scott's] discriminatory conduct," *id.* at ¶ 18. But Gleich remained less than punctual after completing the PIP. On two occasions after completing the PIP, Gleich "was late for work due to unforeseen circumstances." *Id.* at ¶ 19. Gleich's immediate supervisor, however, approved the late arrivals. *Id.* About a month later, Bi-State terminated Gleich's employment, and Scott cited these approved late arrivals as grounds for the decision in a termination letter. *Id.* at ¶¶ 20–23.

Having exhausted administrative remedies, Gleich sues Bi-State alleging retaliatory termination, sex-based discrimination, and race-based discrimination, all in violation of Title VII. Bi-State filed a motion to dismiss for failure to state a claim. Doc. 5. Gleich responded, and also filed a motion for leave to amend his Complaint. Doc. 14. Gleich seeks to add three factual allegations: first, that he was "qualified in all aspects for the TSS position, and throughout his employment met the expectations of a TSS," Doc. 14-1 at ¶ 12; second, that "Scott was made aware of the complaint submitted by [him]," *id.* at ¶ 15; and third, that "but for

2

[his] opposition to discrimination, [he] would not have been terminated," *id.* at ¶ 29. The parties have fully briefed both motions, including the issues of undue delay and futility. Docs. 6, 12, 14–17.

**II.     Standards**

    **A.     Leave to Amend**

Rule 15(a) of the Federal Rules of Civil Procedure, which governs motions for leave to amend pleadings, states that courts "should freely give leave [to amend] when justice so requires." Under Rule 15's liberal amendment policy, "[d]enial of leave to amend pleadings is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the non-moving party can be demonstrated." *Hillesheim v. Myron's Cards & Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018) (quoting *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 995 (8th Cir. 2001)); *see also Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008) ("A court abuses its discretion when it denies a motion to amend a complaint unless there exists undue delay, bad faith, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment.").

"An amendment is futile if the amended claim 'could not withstand a motion to dismiss under Rule 12(b)(6).'" *Hillesheim*, 897 F.3d at 955 (quoting *Silva v. Metropolitan Life Ins. Co.*, 762 F.3d 711, 719 (8th Cir. 2014)). In other words, "[a]lthough ordinarily the decision of whether to allow a plaintiff to amend the complaint is within the trial court's discretion, when a court denies leave to amend on the ground of futility, it means that the court reached a legal conclusion that the amended complaint could not withstand a Rule 12 motion . . . ." *In re Senior Cottages of Am., LLC*, 482 F.3d 997, 1001 (8th Cir. 2007) (citing Fed. R. Civ. P. 12).

3

### B. Rule 12(b)(6) Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure—which, as noted, guides the Court's futility analysis—a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." The notice pleading standard of Rule 8(a)(2) of the Federal Rules of Civil Procedure requires the plaintiff to give "a short and plain statement showing that the pleader is entitled to relief . . . ." To meet this standard and to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). This requirement of facial plausibility means the factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). The Court must grant all reasonable inferences in favor of the nonmoving party. *Lustgraaf v. Behrens*, 619 F.3d 867, 872–73 (8th Cir. 2010).

When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff . . . ." *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010). Threadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Although courts must accept all factual allegations as true, they are not bound to take as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555 (citation omitted); *Iqbal*, 556 U.S. at 677–78.

To survive a Rule 12(b)(6) motion in a Title VII case, the plaintiff need not plead facts establishing a prima facie case because the prima facie case is an evidentiary standard—not a pleading requirement. *Wilson v. Arkansas Dep't of Hum. Servs.*, 850 F.3d 368, 372 (8th Cir.

4

2017) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz*, 534 U.S. at 512–13. However, "elements of the prima facie case are [not] irrelevant to a plausibility determination in a discrimination suit. Instead, such elements are part of the background against which a plausibility determination should be made." *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016) (internal citations and quotations omitted).

**III.   Discussion**

    **A.   Undue Delay**

Bi-State first asserts that the Court must deny Gleich's Motion for Leave to Amend because he filed the motion after undue delay. Arguing that Gleich must "offer the rationale behind his delay in amending his complaint," Doc. 16 at p. 3, Bi-State first argues—without citation to any authority—that "the Court *must presume*" that the alleged failure to timely seek leave to amend "is the direct result of an undue delay." Doc. 16 at p. 3 (emphasis added). The Court rejects this unsupported proposition. Even though this Court is slow to countenance departures from deadlines, Bi-State does not attempt to articulate prejudice that would come as a result of the delay.

Bi-State next cites *Bommarito v. Vilsack*, where the court denied plaintiff's motion for leave to amend because, among other things, she "offer[ed] no rationale for why she ha[d] waited nearly one year to seek to amend her complaint." No. 4:11-cv-423, 2012 WL 786227, at *2 (E.D. Mo. Mar. 9, 2012). But in that case, the Court considered a variety of other factors militating against granting leave, including futility of the amendments and prejudice to the defendant. *Id.* at *2–3. Here, Gleich only waited one week after the Rule 15(a)(1)(B) amend-as-

5

a-matter-of-course deadline, and as explained below, Bi-State has not shown futility. Fed. R. Civ. P. 15(a)(1)(B). The Court rejects Bi-State's assertion of undue delay.

### A. Futility

Having rejected Bi-State's undue-delay argument, the Court turns to whether Bi-State has demonstrated futility.

#### 1. Retaliation

Title VII of the Civil Rights Act of 1964 bars employers from discharging any employee in retaliation "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). "To establish a retaliation claim under Title VII, an employee must show [1] that he engaged in statutorily protected conduct, [2] that he suffered an adverse employment action, and [3] that the protected conduct was a but-for cause of the adverse action." *Bennett v. Riceland Foods, Inc.*, 721 F.3d 546, 551 (8th Cir. 2013) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 361–62 (2013)). Considering Gleich's allegations in light of a retaliation claim's elements, *see Blomker*, 831 F.3d at 1056, the Court finds that Gleich's proposed amended complaint states such a claim, and Bi-States futility arguments to the contrary—which contest only the third element—are thus unavailing.

The first element requires that the employee engaged in statutorily protected conduct, like filing a complaint. But not just any work-related complaint qualifies as protected conduct: "[a]n individual making a complaint must have an objectively reasonable belief that an actionable Title VII violation has occurred for the complaint to qualify as a protected activity." *Gibson v. Concrete Equip. Co., Inc.*, 960 F.3d 1057, 1064 (8th Cir. 2020). "[A] plaintiff employee need

6

not establish that the conduct he opposed was in fact prohibited under Title VII" to satisfy the first element. *Bakhtiari v. Lutz,* 507 F.3d 1132, 1137 (8th Cir. 2007). Rather, the plaintiff must allege enough to allow the court to infer that he had a "good faith, reasonable belief that the underlying challenged conduct violated [Title VII]." *Id.* (quoting *Buettner v. Arch Coal Sales Co.,* 216 F.3d 707, 714 (8th Cir. 2000)) (alteration in original). The Court makes this reasonableness assessment "in light of the applicable substantive law." *Gibson*, 960 F.3d at 1065 (quoting *Brannum v. Mo. Dep't of Corr.*, 518 F.3d 542, 548–49 (8th Cir. 2008)). Race and sex discrimination under Title VII "require[] that an employee suffer an 'adverse employment action' that amounts to a 'material employment disadvantage,' such as 'cuts in pay or benefits' or other actions that 'affect an employee's future career prospects.'" *Id.* (quoting *Jones v. City of St. Louis*, 825 F.3d 476, 480 (8th Cir. 2016)); *see* 42 U.S.C. § 2000e-2(a).

Here, Gleich filed a discrimination complaint with Bi-State's EEO/Workforce Diversity Department when Scott allegedly placed him on a PIP and did not place non-Caucasian and female employees on PIPs for similar conduct. While he has not pleaded many facts describing the nature of the PIP, other facts in the amended complaint lead the Court to assume, though not decide, that Gleich reasonably believed that the PIP amounted to a material employment disadvantage under Title VII. For example, given that Gleich filed a complaint when Scott placed him on a PIP—which appears to be a reformative and perhaps even punitive measure— the Court presumes for now that the PIP was disadvantageous to his career. Bi-State has not argued otherwise. If the PIP had only imposed "minor changes in working conditions that merely inconvenience[d]" him, *Sallis v. Univ. of Minn.*, 408 F.3d 470, 476 (8th Cir. 2005), the Court presumes that Gleich would not have filed complaints and would not have "belie[ved] he was being discriminated against," Doc. 14-1 at ¶ 26. Drawing all reasonable inferences in his

7

favor, Gleich has pleaded that he likely had an objectively reasonable basis for believing that Scott's decision to place him, but not others, on a PIP constituted a statutory violation. *See Brower v. Runyon*, 178 F.3d 1002, 1006 (8th Cir. 1999). Gleich has adequately pleaded that he reasonably believed that he engaged in statutorily protected conduct under the first element of a retaliation claim.

Gleich's allegations similarly satisfy the second element of a retaliation claim—whether the employee suffered an adverse employment action. Gleich alleges that Bi-State terminated his employment on February 25, 2021, Doc. 14-1 at ¶ 21, and termination, as the paradigmatic adverse-employment action under Title VII, satisfies the second element. *See Carpenter v. Con-Way Cent. Express, Inc.*, 481 F.3d 611, 616 (8th Cir. 2007) (quoting *Thompson v. Bi-State Dev. Agency*, 463 F.3d 821, 825 (8th Cir. 2006)). Gleich has adequately pleaded an adverse employment action, and Bi-State does not argue otherwise.

Bi-State chiefly contests the third element—whether the employee's conduct was a but-for cause of his termination. In one of Gleich's three proposed factual amendments, he alleges that "but for [his] opposition to discrimination, [he] would not have been terminated." Doc. 14-1 at ¶ 29. Although this allegation verges on the conclusory, the Court finds that, considered in concert with Gleich's other allegations, it renders Gleich's retaliation claim more plausible. *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) ("[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible."). For example, Gleich alleges that Scott did not place non-Caucasian and non-male employees on PIPs for similar conduct, that Gleich filed multiple discrimination complaints explicitly naming Scott, that Scott purports to have discharged Gleich for episodes of tardiness that Gleich's immediate supervisor had approved, and that Bi-State allegedly discharges male

8

and Caucasian employees for conduct for which it would not discharge a female or non-Caucasian employee. Doc. 14-1 at ¶¶ 14, 18, 19, 21–23, 35, 42. The Court emphasizes that, to succeed on a retaliation claim under Title VII, the plaintiff need not prove that the protected activity was the *sole* cause of the termination; rather, the plaintiff must show that it was a but-for cause. "If the employer intentionally relies in part on an individual employee's [protected trait] when deciding to discharge the employee[,] . . . a statutory violation has occurred." *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1741 (2020). While the claim may be difficult to prove, the Court finds that Gleich's well-pleaded allegations give rise to the reasonable inference that his engagement in protected activity was sufficient grounds for his termination, despite Bi-State's arguments to the contrary.

      Bi-State argues that this proposed amendment is futile because, even if Gleich asserts that his complaint was the but-for cause of his discharge, the lapse of around four months from the time of his first complaint to the time of discharge "prohibits an inference of retaliatory intent" and that Gleich's tardiness was the sole cause of this discharge. Doc. 15 at p. 4. Bi-State relies on *Kipp v. Missouri Highway & Transp. Comm'n*, in which the Eighth Circuit wrote that "the interval of two months between the complaint and Ms. Kipp's termination so dilutes any inference of causation that we are constrained to hold as a matter of law that the temporal connection could not justify a finding in Ms. Kipp's favor on the matter of causal link." 280 F.3d 893, 897 (8th Cir. 2002).

      But this quotation from *Kipp* fails to support Bi-State's argument for at least three reasons. First, Gleich allegedly filed multiple complaints after the first complaint "up through his termination." Doc. 14-1 at ¶ 25. Thus, the Court infers that Gleich submitted his last complaint closer to his discharge date than Bi-State suggests. Second, Gleich alleges that Scott,

9

once he became aware of Gleich's post-PIP episodes of tardiness, "decided to use the late arrivals a pretext to terminate [him]." Doc. 14-1 at ¶ 20.  Gleich's supporting allegations—e.g., that Gleich's complaints cited Scott by name, Doc. 14-1 at ¶¶ 14–18—render this allegation at least plausible.  Assuming without deciding that Scott was waiting for a pretext to discharge Gleich, even a lapse of a few months between the filing of the last complaint and the date of discharge would not necessarily negate an inference of causation at this stage in the proceedings.  Third, the Eighth Circuit in *Kipp* was reviewing the district court's decision to deny a motion for judgment as a matter of law, so it applied an evidentiary standard that a court does not apply to a leave-to-amend motion.  *Kipp*, 280 F.3d at 896.  And as for Bi-State's argument that it discharged Gleich only for tardiness, Doc. 15 at p. 3, that is an argument it must support with evidence at a later stage.  *See Stevens v. St. Louis Med. Ctr.*, 97 F.3d 268, 270 (8th Cir. 1996).  Accordingly, Bi-State has failed to demonstrate futility as to the third element of Gleich's retaliation claim as well, leading the Court to conclude that Gleich's Motion for Leave to Amend is not futile as to his retaliations claims.

### 2. Sex and Race Discrimination

Gleich's Motion for Leave to Amend is not futile as to his sex- and race-discrimination claims either—and for similar reasons.  Title VII makes it unlawful for an employer to "discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  This provision requires but-for causation.  *See Bostock*, 140 S. Ct. at 1740.  Alternatively, "[a]n unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors

10

also motivated the practice." 42 U.S.C. § 2000e-2(m).  This provision, in contrast, requires a showing that the protected trait was a "motivating factor" of the unlawful practice.  *See Bostock*, 140 S. Ct. at 1740 ("Under this more forgiving [motivating-factor] standard, liability can sometimes follow even if sex *wasn't* a but-for cause of the employer's challenged decision.").

      The Court again uses the elements of the prima facie case of both sex- and race-based discrimination as a "prism" to shed light on the plausibility of Gleich's amended claims.  *See Blomker*, 831 F.3d at 1056.  Each cause of action contains the same elements:  to establish sex or race discrimination, the plaintiff must show that (1) he is a member of a protected class, (2) he was meeting his employer's legitimate job expectations, (3) he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination (for example, the employer treated similarly situated employees outside the class differently).  *See Rebouche v. Deere & Co.*, 786 F.3d 1083, 1087 (8th Cir. 2015) (sex discrimination); *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012) (race discrimination).  At times, even in cases that do not involve discriminatory failure-to-promote or failure-to-hire claims, the Eighth Circuit has required a plaintiff to show that he was qualified for the position, rather than show that he was meeting his employer's legitimate job expectations. *See, e.g.*, *Fiero v. CSG Sys., Inc.*, 759 F.3d 874, 878 (8th Cir. 2014) (sex discrimination); *Whitley v. Peer Review Sys., Inc.*, 221 F.3d 1053, 1055 (8th Cir. 2000), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) (race discrimination).  Against the background of these elements, the Court finds that Gleich has adequately pleaded both sex and race discrimination in his proposed amended complaint, and Bi-State has failed to demonstrate futility.

      First, Gleich has pleaded that he is a member of two protected classes.  He is a male, Doc. 14-1 at ¶ 2, and he is Caucasian, *id.* at ¶ 3.  *See Quick v. Donaldson Co.*, 90 F.3d 1372, 1377 (8th

11

Cir. 1996) (noting that the term "sex" in Title VII includes both men and women); *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 278–79 (1976) (noting that the term "race" includes all races).

Second, Gleich pleads that he was qualified for his position and that he met Bi-State's expectations throughout his employment. Doc. 14-1 at ¶ 12. While these allegations, too, verge on the conclusory, Gleich's other allegations lead the Court to draw the reasonable inference that he was in fact qualified and that he was meeting Bi-State's expectations. The "expectations" at issue here are those involving punctuality. Gleich alleges that his two episodes of tardiness after completing the PIP were out of his control, and the fact that his supervisor approved them increases the plausibility of this allegation. On the well-pleaded facts of the proposed amended complaint, the Court draws all inferences in Gleich's favor and concludes, for present purposes, that such episodes were truly out of his control. Further, given Gleich's allegation that he was qualified—which he now seeks to add after Bi-State pointed out his failure to plead his qualifications in its Motion to Dismiss, Doc. 15 at p. 5—and the fact that Bi-State apparently has never contested his qualifications, the Court draws the inference that he was indeed qualified. Accordingly, Bi-State has failed to demonstrate why the proposed amendments would be futile as to this element.

Third, Gleich suffered an adverse employment action when Bi-State discharged him, as noted above.

Fourth and finally, Bi-State argues that Gleich's allegations do not satisfy the fourth element. Doc. 15 at pp. 5–6. The Court disagrees, having found allegations to support an inference of discrimination. For example, Gleich pleads that Bi-State has not terminated female and non-Caucasian employees for similar conduct, Doc. 14-1 at ¶¶ 34, 42, and that Scott used his

approved late arrivals as a "pretext" for discharging him, *id.* at ¶ 20.  The Court reiterates that such allegations are, at this stage, just that—allegations.  But for purposes of a futility analysis, the allegations here, taken as true, state claims for both sex- and race-based discrimination.  Bi-State has not furnished the Court with any arguments compelling the conclusion that the proposed amended complaint would be futile as to Gleich's sex- and race-discrimination claims.

## IV.     Conclusion

Because Bi-State has failed to demonstrate that Gleich's proposed amended complaint suffers from futility, undue delay, or any other defect, the Court grants Gleich's [14] amended motion for leave to file first amended complaint, and denies as moot Bi-State Development Agency's [5] motion to dismiss.  The Court directs Plaintiff to file his amended complaint by no later than Monday, October 31, 2022.

So Ordered this 27th day of October, 2022.

_____
STEPHEN R. CLARK
UNITED STATES DISTRICT JUDGE

13